OPINION
This appeal from the Muskingum County Common Pleas court involves the legal existence of a lane across appellants' land to the land locked farm of appellee.
No issue as to an easement by necessity has been raised but rather the creation of a prescriptive easement and/or the abandonment thereof.
 ASSIGNMENTS OF ERROR I.
"THE TRIAL COURT ERRED WHEN IT FOUND THAT THE APPELLEE HAS A PRESCRIPTIVE EASEMENT OVER THE LAND OF THE APPELLANTS."
 II.
"THE TRIAL COURT ERRED WHEN, AFTER FINDING THAT THE APPELLEE HAS A PRESCRIPTIVE EASEMENT OVER THE LAND OF THE APPELLANTS, IT DID NOT FIND THAT SUCH EASEMENT HAD SUBSEQUENTLY [SIC] BEEN EXTINGUISHED."
 III.
"THE DECISION OF THE TRIAL COURT AND THE JUDGMENT ENTRY IMPLEMENTING IT MISSTATED THE EVIDENCE AND IS AMBIGUOUS."
 STATEMENT OF THE FACTS AND CASE
Historically, Larry E. Merry and Jill A. Merry purchased 160 acres in Perry Township, Muskingum County, Ohio, from Judith E. Nelson, unmarried by Deed Vol. 1153 P.446 on March 3, 1999. (Moore Farm).
Phillip and/or Judith E. Nelson acquired title from Frances Moore, widow of Marion Moore, in 1992. Mr. Moore, who died in 1991 acquired the subject land from his parents who owned such farm at least from 1922. Mr. Moore, Sr. died in 1957. Mrs. Moore and a daughter resided on the farm until the early 1960's, after which it remained vacant as her son, Marion Moore, did not reside thereon after his marriage in the 1950's.
The home burned in the 1970's.
Appellants purchased their farm, (Clark farm), which adjoins the Moore farm, in December, 1960.
The evidence indicates that a lane existed at least from the 1920's leading from East Wheeling Road across the Clark farm to the Moore farm.
At times a cable was stretched across the lane. Also, due to thefts occurring, two locked gates were installed at some time, one near the East Wheeling Road and one at the Moore farm. Marion Moore and the former owner of the Clark farm, Mr. Taylor had keys to the gates. The gates were installed by verbal agreement between the then owners.
Some testimony indicated that other parties used the lane on occasion to purchase fruit, Christmas trees and pine branches from the Moore farm during Moore ownership.
Evidence was produced that, as a Bank lending requirement, a license agreement (defendant's Exhibit E), relative to use and maintenance of the lane was executed between appellants and Phillip A. Nelson and Judith E. Nelson on February 12, 1993 and recorded in Vol. 1075 p. 127.
This licensing agreement followed action by appellants to close the lane as they felt it's continued existence was a nuisance.
Appellee filed this action for an injunction asserting a prescriptive easement for continued use of the lane for ingress and egress to the Moore farm.
After presentation of evidence the trial court issued findings of the following facts:
 "1) The property owned by the plaintiff has had only one known means of ingress and egress, that being the lane subject to this lawsuit.
 "2) Said lane crosses the land of the defendant. No written or recorded document deals with this lane until the license between the defendant and Mr. Nelson entered into in 1993.
 "3) Oil well people use said lane now for the purpose of servicing oil wells on both the defendant and plaintiffs land.
 "4) From at least 1922 to 1960 a home was located on the defendant's property and said lane was the only means of ingress and egress.
"* * *
 "6) There was no showing that the use of this lane was permissive between 1922 and 1960, a period of 38 years. Therefore, this Court finds that an easement by prescription was created during this time period.
 "7) Members of the Moore family continued to use said lane and visit their property until Marion Moore died in 1991. The defendant testified that Marion Moore was given a key to the gates on said lane, therefore any control over said lane claimed by the defendant was done with the cooperation and permission of the owner of said lane until the license agreement in 1993.
 "8) Based upon the findings in paragraph (7) the easement established by prescription has not been extinguished by adverse possession."
Based upon these facts and Pavey v. Vance (1897), 56 Ohio St. 162, the trial court issued the following decision:
 "Therefore, the Court finds that there is an easement for the purpose of ingress and egress to the land of the plaintiff across the land of the defendant. No testimony was given as the physical nature of this easement. But, since this easement was used as the only means of ingress and egress to the defendant's property when a home was located there, the Court finds that said easement should be wide enough to permit traffic to pass to and from the defendant's property. It will be incumbent upon the plaintiff to maintain said easement. Gates may be placed on said easement so that the defendant may enjoy the use of his property, but said gates shall not hinder the use of the easement by the plaintiff."
 I., II.
We shall address the first and second Assignments of Error jointly as, even though they sound in the alternative, each questions the trial court's decisions based upon the facts presented.
Appellants state that a prescriptive easement is created by use that is open, notorious, adverse and continuous for a period in excess of 21 years and that use by permission or agreement does not create such property right. Pa. Rd. Co. v. Donovan (1924), 111 Ohio St. 341.
While there is some doubt that all of such elements are required in Ohio to establish a prescriptive easement, (See Carlyn v. Garn (1995),105 Ohio App.3d 704, McCune v. Brandon (1993), 85 Ohio App.3d 697), at least the non-permissive use must be open, continuous and adverse for a period exceeding 21 years.
It should be noted that once the required elements of a prescriptive use have been presented to the court's satisfaction, the burden then shifts to the owner of the land upon which the easement is asserted to submit evidence of permissive use, thereby defeating the required adverse nature of the claim. Pavey v. Vance, et al. (1897), 56 Ohio St. 162.
While appellants present an argument as to major differences in Pavey, as to the subject case, we fail to find significant differences.
In the case sub judice there was ample evidence presented to the trial court as to the requirements of prescriptive usage. Also, appellant Ronald Clark testified as to an agreement with Marion Moore relative to moving the blocking cable and providing keys to each gate (T. at p. 41), thereby acknowledging usage rights in the Moore's.
The cited case Goldberger v. Bexley Properties (1983), 5 Ohio St.3d 82
is of no assistance as to the ultimate issue as a usage agreement existed. Also, in McCune referenced previously, the use was found to be permissive as was the case in Carlyn and Pa. Rd. Co. Therefore, in each of such cases the owner of the servient estate was either able to meet the burden of proof which had shifted as to permissive use or other required factors were absent.
In the case sub judice, after the trial court accepted the evidence as to the time usage and openness of the lane, appellants failed to establish by any evidence the permissive nature, thereby adversity was concluded.
Clearly, the license agreement was signed in 1993, but this, under the evidence was long after the prescriptive rights had arisen and was executed due to lending requirements (T. at p. 47 — 48), defense Ex. E) and had no effect upon termination of the established prescriptive easement. No other evidence sufficient to eliminate the prescriptive property rights was presented.
We therefore find that the first and second Assignments of Error are not well taken.
 III.
The third Assignment of Error alleges non-conformity to the evidence and ambiguity.
The mere choice of the trial court's words "No testimony was given as to the physical nature of the easement" does not necessarily mean the absence of some testimony as to the width being no greater than nine feet in width (T. at p. 47) and some testimony as to installation of stones (T. at p. 11). No survey of the lane with a specific legal description was provided.
However, the trial court's language: "that said easement should be wide enough to permit traffic to pass to and from the defendant's property" may be interpreted to increase the easement to a double width when the only testimony as to the width was not in excess of nine feet.
We therefore sustain the third Assignment of Error but only to the extent of such width interpretation and remand this cause for clarification of the easement width to conform to the evidence presented as the lane has existed for ingress and egress but affirm the trial court's decision relative to the existence of the lane by prescriptive right.
Whether the parties will unfortunately have difficulties in the future is not a present justiciable issue before this Court but if such arises it will not be due to the sufficiency of the Court's decision but may arise as the result of a failure to accept such decision in its entirety.
The third Assignment of Error is sustained to the extent indicated.
This cause is affirmed on part and reversed in part.
By: BOGGINS, J. HOFFMAN, P.J. and FARMER, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the decision of the Muskingum County Court of Common Pleas is affirmed in part and reversed in part. Costs assessed to appellants.